**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RODNEY FIELDER,

    Plaintiff,

vs.                                                     No. 1:19-CV-00569 WJ/JHR

B&B CONSULTANTS, INC.
d/b/a SONIC AMERICA'S DRIVE-IN,
and JOHN DOES 1-10,

    Defendants.

**ORDER DENYING MOTION TO REMAND**

THIS MATTER comes before the Court on Plaintiff's Motion to Remand (**Doc. 11**). Plaintiff contends that Defendant B&B Consultants, Inc. d/b/a Sonic America's Drive-In ("Defendant") has not met its burden to establish diversity jurisdiction. Specifically, Plaintiff avers that Defendant has not made a sufficient showing that the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a). The Court disagrees and finds that Defendant has set forth sufficient jurisdictional facts to establish diversity jurisdiction. Accordingly, for the reasons set forth below, Plaintiff's Motion is DENIED.

**BACKGROUND**

This is a slip-and-fall case wherein Plaintiff alleges that he slipped on puddle of oil located on Defendant's property. (*See* Doc. 1-1 at 2.) Prior to filing his Complaint, Plaintiff submitted a demand letter to Defendant, outlining what Plaintiff (or more, perhaps more accurately, Plaintiff's counsel) believed to be both the low- and high-end of Plaintiff's estimated damages, which amounted to $37,659.00 and $157,659.00, respectively. (*See* Doc. 14-1 at 6.) Plaintiff's demand

detailed his injuries and his alleged damages, including past and future medical expenses, pain and suffering and loss of enjoyment of life. (*Id.* at 6–7.)

Plaintiff's letter also referenced the fact that his counsel had undertaken an investigation of Defendant's premises and found a pattern of conduct that "expose[d] [Defendant] to exemplary damages." (*Id.* at 3.) Plaintiff further explained that he was "confident" that the question of exemplary damages would be presented to the jury in light of Defendant's alleged "reckless disregard for its patrons." (*Id.*) Indeed, both Plaintiff's low- and high-end estimates included amounts for exemplary damages. (*Id.* at 6.) Plaintiff ultimately demanded $75,000 to settle his claims. (*Id.*) Defendant countered with an offer of $5,000. (Doc. 14-2 at 1.) Plaintiff subsequently filed a Complaint which included references to punitive damages. (Doc. 1-1 at ¶¶ 25, 35, Prayer.) Defendant timely removed to U.S. District Court. Plaintiff contends that removal was improper and asks that this case be remanded to New Mexico state court. He now contends that only $20,000 is in play. (Doc. 11 at 7.)

## DISCUSSION

Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994), with the requirements for federal jurisdiction found at 28 U.S.C. §1331 (federal question jurisdiction) and §1332 (diversity jurisdiction). The procedure for removal is found at 28 U.S.C. §1446. Due to the exceptional nature of federal jurisdiction, all doubt should be resolved against removal. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citations omitted). Where a defendant seeks to invoke the diversity jurisdiction of the Court, the burden is on the defendant to establish by a preponderance of the evidence that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000. *See* § 1446(c)(2); *Tellez-Giron v. Conn's Appliances, Inc.*, No. 1:17-cv-01074,

2017 WL 611361, at *2 (D.N.M. January 29, 2018) (citing *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1342 (D. Kan. 1997). In the instant case, there is no dispute as to citizenship–Plaintiff is a citizen of California, Defendant is a citizen of New Mexico. (*See* Doc. 1 at 3.) The only issue before the Court then is whether Defendant has presented sufficient jurisdictional facts to establish that the amount in controversy exceeds $75,000. (*See* Doc. 15 at 1.)

Ordinarily, a defendant's assertion that the amount in controversy meets the jurisdictional requirement is accepted by the court unless it is challenged by the plaintiff. *See Dart v. Cherokee Basin Operating Co., LLC, v. Owens*, 135 S. Ct. 547, 550 (2015). As a threshold matter, the Court notes that under the New Mexico Rules of Civil Procedure, a plaintiff is not permitted to include an *ad damnum* clause requesting a specific amount of monetary damages in his complaint. *See* Rule 1-008(A)(3) NMRA. Even if such a clause was allowed, a plaintiff could easily avoid federal jurisdiction by declining to allege the jurisdictional amount and, in so doing, frustrate the purpose of diversity jurisdiction. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). Accordingly, a defendant is permitted to show how much is in controversy through other means, including estimates of damages derived from allegations in the Complaint, Plaintiff's answers to interrogatories, and "other documents that demonstrate plaintiff's own estimation of [his] claim." *See id.* at 956.[1] A defendant need only show that it is possible that more than $75,000 is "in play" to satisfy its burden. *See id.* at 955. Once a defendant proves sufficient jurisdictional facts by a preponderance of the evidence, that defendant is "entitled to stay in federal court unless it is legally

---

[1] Plaintiff's contention that *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1242–43 (D.N.M. Oct. 31, 2014) "requires" Defendant to prove the amount in controversy under certain methods mischaracterizes the law. (Doc. 15 at 3.) First, as a district court opinion, *Aguayo* is persuasive, not binding, authority on Defendant and, as such, cannot "require" Defendant to do anything. Moreover, the *Aguayo* analysis is merely a recitation of what the Tenth Circuit in *McPhail* described as permissive means by which a defendant may demonstrate the amount in controversy. *See id.* at 1242. Nothing in *Aguayo*, or, more importantly, *McPhail*, requires a defendant to use these means, nor does it appear that these means are meant to be an exhaustive list of the *only* permissive means a defendant may use to satisfy its burden. What is more, *Aguayo* and *McPhail* appear to treat these methods as disjunctive, not conjunctive as Plaintiff suggests.

certain that less than $75,000 is at stake." *Id.* at 954; *see also Back Doctors Ltd. v. Metropolitan Property & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court.").

Additionally, punitive damages may be used to establish an amount in controversy which meets jurisdictional requirements. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). While a "mere assertion that punitive damages may be possible is insufficient," if the defendant can establish "jurisdictional facts that make it possible that punitive damages are in play," the Court can consider the availability of those damages in its amount in controversy analysis. *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012). The defendant can establish such facts by referring to "facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible." *Id.* Thus, it is not necessary that Defendant show that it is more likely than not that punitive damages will be awarded, but rather whether there are facts that tend to show punitive damages could potentially be awarded. *Id.*

In this case, the Defendant has established sufficient jurisdictional facts to show that more than $75,000 is at play. While Plaintiff argues that the Court should consider only his compensatory damages estimates in its analysis, (Doc. 15 at 2–3), he points to no authority which so dictates. Plaintiff himself demanded $75,000 to settle this case, and alleged that his damages could be as high as $157,659. The Court agrees with Defendant that, as the estimate and demand are based on a range of future medical bills and related hedonic damages, they appear to be reasonable estimates of Plaintiff's claim.

Further, as Defendant rightly concedes, punitive damages are normally unavailable in ordinary negligence cases. *See* UJI 13-1827 NMRA. However, where a defendant engages in

culpable conduct amounting to malicious, willful, reckless, or wanton conduct, punitive damages may be awarded. *See id.* Here, Plaintiff has not only asserted an entitlement to punitive damages (Doc. 1-1, ¶¶ 25, 35), but has also requested the same in his prayer for relief to "punish" and "deter" Defendant and others in the future. (*Id.* at 5, ¶ B.) Additionally, in his demand letter Plaintiff accused Defendant of "reckless disregard" of its customers and contended that Defendant has "exposed itself to exemplary damages" through its alleged "pattern" of not cleaning up oil spills. (Doc. 14-1 at 3.) Moreover, Plaintiff alleges that Defendant had knowledge of a "persistent risk," yet failed to address it. (*Id.*) These allegations suggest that Defendant had the kind of culpable mental state that would warrant an award of punitive damages under New Mexico law. At the very least, they show that punitive damages are potentially in play.

Plaintiff relies heavily on *Tellez-Giron v. Conn's Appliances, Inc.*, 2017 WL 611361, an opinion authored by this Court regarding remand, and attempts to distinguish his case from the facts of *Tellez-Giron*. Those efforts are unpersuasive. Plaintiff argues that there is a significant difference between "affirmatively" pleading that the defendant's actions *are* culpable conduct rising to the level to warrant punitive damages, as the plaintiff did in *Tellez-Giron*, and simply including a "placeholder" (*see* Doc. No. 11 at 7) to the effect that *if* Defendant's actions warrant punitive damages, Plaintiff is entitled them, as Plaintiff did here. (*See* Doc. 1-1 at ¶¶ 25, 35.) The Court sees no appreciable difference. What is more, Plaintiff concedes that he "alleged the possibility of [punitive damages] depending on what was found throughout the course of litigation." (Doc. 11 at 9.) Accordingly, it is clear to the Court that Plaintiff believes there is a possibility that punitive damages could be in play. The fact that he now seeks to avoid federal jurisdiction by attempting to distance himself from that contention on the basis that it was not "affirmatively" made does not change the amount of damages at stake.

5

Additionally, Plaintiff misapprehends *Tellez-Giron*. This Court simply explained that punitive damages could be considered in the amount in controversy analysis if the defendant could present facts demonstrating that punitive damages were possible. 2017 WL 611361, at * 3. There is nothing in *Tellez-Giron*, or *McPhail*, the controlling authority to which *Tellez-Giron* cites, which suggests that a plaintiff must affirmatively plead the elements of punitive damages in his complaint in order for the court to consider the possibility of such damages in its amount in controversy analysis. As such, even assuming *arguendo* that Plaintiff has not affirmatively pleaded punitive damages, it makes no difference to the outcome.

Plaintiff, without citation to any authority, would also have this Court consider whether there is any potential for reduction of damages based on comparative fault. (*See* Doc. 15 at 3.) But the amount in controversy requirement contemplates the potential damages–the amount that will be at issue in the course of the litigation–not the case's settlement value or the amount a plaintiff is likely to actually recover. *McPhail*, 529 F.3d at 956. As such, the amount in controversy analysis does not include any potential for reduction based on comparative fault, as Plaintiff suggests. (*See* Doc. 15 at 3.)

Finally, Plaintiff relies on the fact that Defendant's counteroffer to Plaintiff's demand was significantly less than $75,000 as support for his assertion that Defendant cannot meet its burden. Considering that Plaintiff is suggesting that the Court view his high-end estimate of damages as mere "puffery," (*see* Doc. 11 at 6–7), it strikes the Court as a little unfair that Defendant's $5,000 counteroffer not be viewed in the same manner as opposed to a realistic–and outcome determinative–estimate of the amount in controversy in this case (*id.* at 4). Accordingly, the Court rejects Plaintiff's argument.

**CONCLUSION**

The Court cannot conclude to a legal certainty that less that $75,000 is at stake in this case. Defendant has pointed out sufficient evidence in the record to demonstrate the possibility of an amount in controversy in excess of $75,000. Plaintiff's post-removal averment that only $20,000 is in play, an amount which falls well below even his own low-end estimate of damages, is an attempt to avoid federal jurisdiction. Therefore, for all the reasons stated herein, Plaintiff's Motion to Remand (**Doc. 11**) is DENIED.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE